UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH D. EDMONDSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:07-CV-02341-LSC |
| | ] | |
| CITY OF HOOVER, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment,

which was filed by the defendant, the City of Hoover, Alabama ("Hoover"),

on March 13, 2009.   (Doc. 23.)   Plaintiff, Joseph D. Edmondson, sued

Defendant for violations of the Family Medical Leave Act ("FMLA"), 29

U.S.C. § 2611, *et. seq.*, and the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 2611, *et. seq.* (Doc. 1.)   Hoover moved for summary judgment on

all of Plaintiff's claims.   The issues raised in Defendant's motion for

summary judgment have been briefed by both parties and are now ripe for

decision.   Upon full consideration of the legal arguments and evidence

presented by the parties, Hoover's motion for summary judgment will be granted in all respects.

II.    Facts.[1]

Joseph Edmondson ("Edmondson") was employed by Hoover in the Park Maintenance Division of the Public Works Department for approximately eight years.  In July 2006, Edmondson took a leave of absence from work due to anxiety and depression.  Edmondson arranged for his physician, Dr. Thomas Nolen, to send an FMLA certification to Hoover.  The certification faxed to Hoover from Dr. Nolen was dated July 12, 2006, and stated that Edmondson would return to work in "one month."  Although Hoover never notified Edmondson in writing that his Family and Medical Leave ("FML") had been approved; the absence was designated as FML.

On or around August 10, 2006, Dr. Nolen's office contacted Les Lewis ("Lewis"), a Human Resources officer for Hoover, and informed him that

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Edmondson needed an additional month of FML.  Lewis was the primary employee responsible for administering the FMLA program for Hoover.  Lewis subsequently sent a letter to Edmondson informing him that he would need to submit another FMLA certification and be certain that he contacted his supervisor about the need to be off work.

Edmondson took the FMLA paperwork he received from Lewis to Dr. Nolen and received a copy of a certification with a return to work date of September 16, 2006.  Edmondson called and left a message with Nancy Brasher, the secretary for the Park Maintenance Superintendent, and told her that he would be out another month.  He did not, however, give an exact return date, and he did not deliver his copy of the FMLA certification to Hoover.

Instead, Dr. Nolen's office faxed a certification form to Lewis's attention on August 16, 2006.  The new form, dated August 16, 2006, listed the same dates as the initial certification—a start date of July 12, 2006, and a return to work date of "one month."  Lewis faxed a response to Dr. Nolen's office, pointed out that the new form had the original dates of absence, and asked for new dates.  In reply, Dr. Nolen's office faxed a

revised certification form on August 17, 2006, which listed Edmondson's return to work date as September 12, 2006.  Lewis subsequently informed the Public Works Department head, Tommy Daniel ("Daniel"), that Edmondson was expected to return to work on September 12, 2006.

Edmondson testified he did not know that Dr. Nolen faxed a certification form to Hoover with a date different than the copy he received; therefore, he did not report to work on September 12, 2006.  It is undisputed that no one in the Human Resources office informed Edmondson that he was expected to return to work on September 12, 2006. Edmondson testified, however, that he spoke with his immediate supervisor, Kenny Aldridge ("Aldridge"), on the phone on September 6th and told him his return to work date was September 16th.  Edmondson claims that Aldridge informed him the 16th was a Saturday, and Edmondson told him that he would go to his doctor to fix that and be back to work on Monday, September 18th.  Aldridge remembers something different; he testified that Edmondson told him he would return to work on September 12 or 13th.

Hoover's Personnel Policy and Procedure Manual ("Personnel Policy") provides in Section VII, B. 1. b., that employees absent for three or more

consecutive days without authorization or justification "may be considered by the department head as a voluntary resignation."  Another provision of the Personnel Policy, Section VIII, C. 2. a. (25), states that unauthorized and unjustifiable absence from work for a period of three or more consecutive working days may result in dismissal.

On Friday, September 15, 2006, Lewis prepared a termination letter for Daniel's signature.  Aldridge was not consulted.  Daniel signed the termination letter, which was mailed regular mail and certified mail to Edmondson that day.  The letter stated, in part:

> Per Section VIII, C. 2a (25) of the City of Hoover Personnel Policies and Procedures; e.g. "unauthorized and unjustifiable absence from work for a period of three or more consecutive working days" this is to advise that you were expected to return to work from your leave of absence on September 12, 2006, and you did not.  Nor did you contact anyone in authority at the City as to why you were not able to return to work.  Therefore, we consider your absence as your resignation of your employment with the City.

Edmondson testified he made an appointment to visit Dr. Nolen on September 15, 2006, to fix the fact that his return to work date was on a Saturday.  At the appointment, Edmondson obtained a return to work slip

from Dr. Nolen for Monday, September 18, 2006.  Dr. Nolen's records also show that the certification form reflecting a return date of September 16, 2006, was faxed to Hoover's Human Resources Department on Saturday, September 16th.  No explanation is given why this form was allegedly faxed to Hoover at that time, and neither Dr. Nolen's office nor the Hoover Human Resources Department were open on that day.  There is no evidence that the September 16th fax was received by anyone at Hoover on September 16th.

On September 18, 2006, Edmondson reported to his usual duty station. Aldridge, unaware of the termination letter, told him to start cutting the ball fields.  Aldridge informed the Park Maintenance Superintendent that Edmondson had reported to work.  The Superintendent called Daniel, who said Edmondson had abandoned his job and needed to visit Human Resources.

When Edmondson met with Lewis in his office, he told Lewis that he was not expected back to work until that day.  Lewis informed Edmondson that his paperwork showed Edmondson was to return to work on September 12th.  When Edmondson offered the return to work slip, Lewis told him it

was a "moot point" because it was "after the fact."   It was Lewis's understanding that once Edmondson's employment was terminated on September 15th, he could not change that decision.

Edmondson did not challenge his termination through Hoover's grievance procedure.  He filed this lawsuit on December 28, 2007.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

A.   Americans with Disabilities Act.

In the Complaint, Edmondson contends that his anxiety and depression constitutes a qualifying disability under ADA, and he was terminated as a result of disparate treatment.  (Doc. 1 ¶¶ 29-32.)  However, Plaintiff does

not discuss an ADA claim in his opposition memorandum.    (Doc. 26.)

Because Plaintiff fails to make any argument regarding his ADA claim in

response to Defendant's motion for summary judgment, the Court finds that

Plaintiff's ADA claim has been abandoned.    *See, e.g.*, *Coalition for the*

*Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326

(11th Cir. 2000) ("The appellants' failure to brief and argue this issue during

the proceedings before the district court is grounds for finding that the issue

has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d

587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied

upon in summary judgment are deemed abandoned.")

      B.    Family Medical Leave Act.

      Plaintiff's lawsuit against Hoover also includes a claim for wrongful

termination under FMLA.  (Doc. 1 ¶¶ 23-28.)  "The FMLA provides that 'an

eligible employee shall be entitled to a total of 12 workweeks of leave

during any 12-month period . . . [b]ecause of a serious health condition that

makes the employee unable to perform the functions of the position of such

employee.'"  *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1204

(11th Cir. 2001) (quoting  29 U.S.C. § 2612(a)(1)).  Hoover does not dispute

that it is an employer subject to FMLA or that Edmondson is an "eligible employee."

Under FMLA, a plaintiff can pursue two types of legal action: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id*. at 1206. Plaintiff contends that Hoover is liable under both theories. He argues that Defendant failed to follow federal regulations and its own internal FMLA policies, and terminated him for taking FMLA leave. Defendant argues that it merely enforced its policies without deviation, and Edmondson was not entitled to greater rights than those employees who had not taken FMLA leave.

1.    Interference.

"To state a claim of interference with a substantive right [under FMLA], an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id*. at 1207. "He does not have to allege that his employer intended to deny the right; the

employer's motives are irrelevant." *Id*. at 1208.  "Among the substantive rights granted by the FMLA to eligible employees are the . . . right following leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position, 29 U.S.C. § 2614(a)(1)." *Id*. at 1206.

Hoover contends that Edmondson's FMLA leave ended and he was expected at work on September 12, 2006, because (1) that was the return to work date listed on the certification form provided by Plaintiff's doctor, and (2) Edmondson had not provided timely notice that he would be returning from FMLA leave at a later date.  Therefore, in accordance with its Personnel Policy, Defendant determined that Plaintiff had voluntarily resigned his employment when he did not return to work on September 12, 13, and 14th.

Yet, Plaintiff testified that he notified his immediate supervisor, Aldridge, that his return to work date was Saturday, September 16th, and he would be going to the doctor to fix that and return on Monday, September 18th.  Hoover maintains that a "telephone call from Edmondson, if actually made, was not effective to change his authorized return date and

it was his responsibility to ensure that an accurate certification was

provided to the City." (Doc. 23, Ex. 1 at 18.) It appears that Defendant

confuses "notice" with "certification." *See, e.g.*, *Alexander v. Ford Motor*

*Co.*, 204 F.R.D. 314, (E.D. Mich. 2001) ("[I]t is important to note that the

regulations treat 'notice' differently from 'certification.'")

    "Regulations are given 'controlling weight unless they are arbitrary,

capricious, or manifestly contrary to the statute.'" *McGregor v. Autozone*,

*Inc.*, 180 F.3d 1305, 1307 (11th Cir. 1999). At all times relevant to this

action,[2] 29 C.F.R. § 825.309 gave guidance on what notice an employer

could require regarding an employee's intent to return to work:

> (a) *An employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work.* The employer's policy regarding such reports may not be discriminatory and must take into account all of the relevant facts and circumstances related to the individual employee's leave situation.
>
> (b) If an employee gives unequivocal notice of intent not to return to work, the employer's obligations under FMLA to maintain health benefits

---

[2]Many of the regulations promulgated under FMLA were amended, effective January 16, 2009. Throughout this opinion, the Court will reference the regulations in effect during the time period at issue in this dispute.

(subject to COBRA requirements) and to restore the employee cease.   However, these obligations continue if an employee indicates he or she may be unable to return to work but expresses a continuing desire to do so.

(c)  It may be necessary for an employee to take more leave than originally anticipated.  Conversely, an employee may discover after beginning leave that the circumstances have changed and the amount of leave originally anticipated is no longer necessary. An employee may not be required to take more FMLA leave than necessary to resolve the circumstance that precipitated the need for leave.   In both of these situations, the employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed circumstances where foreseeable.   *The employer may also obtain information on such changed circumstances through requested status reports.*

(emphasis added).

It is undisputed that Hoover's Human Resources office received a doctor's certification form stating that Plaintiff could return to work on September 12, 2006.  However, in accordance with federal regulations, Hoover's Personnel Policy required an employee on FMLA leave "to contact his or her *immediate supervisor* at least once on or before the end of every ten days of leave.  The purpose of the contact is to report the status of the

leave and *the approximate return to work date*." (Doc. 23, Ex. 6 § 10.09 E (emphasis added).)    Defendant never challenged whether Plaintiff reported to Aldridge every ten days, and Edmondson has proffered evidence that he notified his immediate supervisor of a new return to work date—Monday, September 18th—well before Defendant determined he had voluntarily resigned his position.  Once Edmondson provided notice that his leave would be longer than the dates listed in the certification form on file, Hoover could, if desired, request recertification.  29 C.F.R. § 825.308(c)(1) (2006).  Plaintiff would then have at least fifteen (15) calendar days to provide the requested certification.  *Id*. § 825.308(d); *see also* Doc. 23, Ex. 6 § 10.09 G.    Edmondson was not given that opportunity prior to his termination.

The Court recognizes that Aldridge testified that Edmondson told him he would return to work on September 12 or 13th.   The veracity of Plaintiff's testimony, in light of Aldridge's statements he was told different dates, is a question of fact that must be resolved by a jury.  The Court also finds there is no binding authority to support Defendant's argument that Edmondson waived relief under FMLA by failing to challenge his termination

through Hoover's grievance process.  Therefore, summary judgment will be denied with regard to Edmondson's FMLA interference claim.

        2.     Retaliation.

In order to succeed on a retaliation claim under FMLA, a plaintiff must "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207.  "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id*. (quotation omitted).

"When evaluating a FMLA retaliation claim [in the absence of direct evidence], we use the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).  In order to establish a prima facie case, "a plaintiff must show that he engaged in statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action." *Id*.; *see also Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000).  "If the plaintiff makes out

a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action." *BellSouth Telecomms., Inc.*, 273 F.3d at 1314.  "If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual." *Id*.

The Court finds that, for the purposes of summary judgment, Plaintiff has established that he engaged in protected activity by taking FMLA leave and suffered an adverse employment action through termination.  As outlined above, Plaintiff has shown that questions of fact exist whether he was entitled to FMLA leave when his termination occurred.  "By doing so, [Edmondson] likewise raised genuine issues of material fact on whether he engaged in statutorily protected activity under the FMLA." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). Moreover, it is undisputed that Edmondson took FMLA leave through September 11, 2006, four days prior to Daniel signing a letter informing Plaintiff that his position was terminated.

"Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'"  *Id*. at 1298

(quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).  "An exception to this rule applies where there is 'unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.'" *Id.* (quoting *Brungart*, 231 F.3d at 799). While the undisputed evidence shows that the decisionmaker(s) in this action did not have knowledge that Plaintiff was then-engaged in statutorily protected activity under FMLA at the time of his termination, it is clear that it was well-known that Edmondson took FMLA leave up to, and including, September 11, 2006.

Plaintiff does not dispute that Hoover has presented a legitimate, nondiscriminatory reason for terminating Edmondson's employment.  Hoover maintains that Lewis and Daniel concluded that Plaintiff had violated the "no call, no show" policy by missing work for three or more days after the date they expected him to return from FMLA leave.  In the words of the U.S. District Court for the Eastern District of Michigan, "[a]n employee is no less absent without leave at the conclusion of a valid FMLA leave than they are during any other point of their employment."  *Alexander*, 204 F.R.D. at 318.

Edmondson argues that Hoover's reason is pretext for retaliation because the letter informing him his employment was terminated says (1) he did not contact anyone in authority to explain why he could not return to work, and (2) his absence from work was "unjustified."  Plaintiff contends that these reasons are false because he did contact his immediate supervisor about his return to work, and his absence was justified through that contact and his copy of the certification form giving a return to work date of September 16, 2006.  (Doc. 26 at 29-30.)[3]  He also contends that Hoover deviated from its Personnel Policy because it did not mail him a notice that his absence from work qualified under FMLA.  (*Id*. at 31.)

The Court's inquiry, however, "is limited to whether the employer gave an honest explanation of its behavior."  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quotations omitted).  There is no evidence that Lewis or Daniel were aware that Plaintiff had contacted Aldridge and given him a later return to work date, nor is there any evidence Lewis or Daniel were aware of the existence of a doctor's

---

[3]Edmondson does not argue temporal proximity as pretext, and temporal proximity alone is insufficient to establish pretext in this case.  *See Hulbert*, 439 F.3d at 1298.

certification listing a return to work date of September 16, 2006, prior to terminating Edmondson's employment.  Moreover, failure to mail a notice approving Plaintiff's FML weeks earlier, when all evidence shows that his absence up to and including September 11, 2006, was treated as FML, also does not show retaliatory animus or disprove Defendant's contention that it honestly believed Edmondson failed to report to work after the expiration of his leave.

Because Plaintiff has not presented sufficient evidence of impermissible retaliatory or discriminatory animus, Defendant is entitled to summary judgment on Edmondson's FMLA retaliation claim.

V.    Conclusion.

In accordance with the rationale outlined above, Defendant's motion for summary judgment will be granted in part and denied in part.  A separate order will be entered.

Done this <u>28th</u> day of <u>July 2009</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297